A95A0634. CHARLTON v. THE STATE.
(459 SE2d 455)

POPE, Presiding Judge.

A jury convicted defendant Keith Charlton of driving under the influence of alcohol to the extent that it was less safe for him to drive. During trial, the trial court suppressed the results of a state-administered breath test on the ground that the arresting officer had failed to advise defendant of his right to have an additional test administered by a qualified person of his own choosing. But the trial court subsequently allowed the State to introduce the breath test results to rebut the testimony of defendant's expert witness. Contending that this was error, defendant appeals his conviction following the denial of his motion for a new trial. We affirm.

Construed in a light most favorable to the verdict, the evidence demonstrates that at approximately 3:00 p.m. on January 20, 1993, Officer J. G. Fouchia of the Gwinnett County Police Department was

monitoring traffic. According to Fouchia, defendant was speeding when he approached and passed Fouchia's police car. Fouchia turned on his blue lights and began following defendant. During this time he observed defendant throw a plastic cup, which contained ice and a clear liquid, out of the car. Then defendant pulled over. Upon walking up to defendant's car, Fouchia detected the smell of alcohol. Consequently, Fouchia asked defendant how much he had had to drink. Defendant told Fouchia that he had quite a bit of beer to drink while helping friends move, but that he had stopped drinking around 1:30 p.m. Fouchia conducted a field sobriety test by having defendant breathe into an alco-sensor, which indicated the presence of alcohol on defendant's breath. Fouchia also noticed that defendant was unsteady, slurred his speech and had glassy eyes. After placing defendant under arrest, Fouchia read defendant the Georgia Implied Consent Warning from a card that the State Patrol had given him. Thereafter, defendant submitted to a breath test on the Intoximeter 3000. The results of the test showed that defendant had an alcohol concentration of .08 grams.

At trial it was determined that the implied consent warning Fouchia read to defendant was inadequate because it did not advise defendant that he had a right to have an additional test administered by a qualified person of his own choosing. See *State v. Causey*, 215 Ga. App. 85 (449 SE2d 639) (1994). Consequently, the trial court suppressed the intoximeter test results. After doing so, the trial court specifically advised defense counsel that the test results might later be admitted if defendant opened the door in some way.

Defendant took the stand and testified that between 9:30 a.m. and 11:15 a.m. on the date in question, he had helped a friend move some furniture. Defendant stated that during this period he drank four beers. Based on defendant's testimony, defendant's expert witness, Dr. Woodford, opined that at the time of his arrest defendant would not have been under the influence of alcohol to the extent that it was less safe for him to drive. Woodford further testified that defendant would only have had a trace of alcohol in his body at the time of his arrest, and that this trace would not have been above the .05 level.

The trial court allowed the State to introduce the intoximeter test results into evidence to rebut Woodford's testimony. During this rebuttal, the State called its own expert witness, forensic chemist James Panter. Panter testified that if defendant's testimony were true, defendant would only have had an alcohol concentration of .01 or .02 at the time of his arrest. Panter further noted that in order for defendant to have registered .08 on the intoximeter, he would have had to consume seven or eight beers on the morning of his arrest, rather than four beers.

Defendant contends that based on our holding in *Causey*, the trial court erred in allowing the State to introduce the intoximeter results for any purpose. Additionally, defendant contends that the test results did not rebut Woodford's testimony because the intoximeter measures breath alcohol levels, and Woodford's testimony concerned blood alcohol levels. We reject both of these contentions.

The "[a]dmission of evidence rests in the trial court's sound discretion, and evidence should be admitted if it is admissible for any legitimate purpose." (Citation and punctuation omitted.) *Krebsbach v. State*, 209 Ga. App. 474 (433 SE2d 649) (1993). Impeachment and rebuttal of a defendant's testimony, and that of an expert's opinion based thereon, is a legitimate purpose. The right to impeach a defendant/witness, as set forth in OCGA § 24-9-82, is one of the cornerstones of the adversarial process. Even evidence which violates constitutional standards of due process, such as unlawfully obtained confessions, may be admitted for impeachment purposes. See *Harris v. New York*, 401 U. S. 222 (91 SC 643, 28 LE2d 1) (1971). In this case, the intoximeter results were admissible as the basis for Panter's testimony to the effect that defendant was not telling the truth about the amount of beer he had consumed on the date and time in question. Consequently, because Woodford's expert opinion was based on defendant's testimony, the trial court did not err in allowing the State to rebut Woodford's opinion by introducing the breath test results. It also is clear that Panter's testimony brought into question Woodford's opinion that defendant's alcohol concentration would not have been over .05 at the time of his arrest. Thus, Panter's testimony also rebutted any presumption in favor of defendant regarding his sobriety. See OCGA § 40-6-392 (b) (1). The mere fact that Woodford's testimony related to blood alcohol levels while Panter's testimony related to breath alcohol is of no significance. Both blood and breath are used to determine "alcohol concentration," which was the basis for both experts' opinions. See OCGA § 40-1-1 (1). Therefore, we hold that the trial court did not abuse its discretion in this case.

In light of the above evidence, we also hold that a rational jury could have concluded beyond a reasonable doubt that defendant was guilty of the crime for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Beasley, C. J., and Ruffin, J., concur.*

DECIDED JULY 13, 1995.

*Spruell & Dubuc, Billy L. Spruell, Melinda D. Taylor*, for appellant.

*Gerald N. Blaney, Jr., Solicitor*, for appellee.